IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELWOOD SMALL,
    Plaintiff
    v.
JOHN WETZEL, Secretary,
Pennsylvania Department of
Corrections, et al.,
    Defendants

: Case No. 3:12-cv-83-KRG-KAP

Report and Recommendation

Recommendation

After the Court of Appeals remanded the equal protection claim in the complaint that alleged that "Jewish inmates also have holy days of fasting and feasting, and [] Jewish inmates are not required to sign forms like the Guidelines in order to participate in those holy days," Opinion of the Court of Appeals at 13, pursuant to Fed.R.Civ.P. 56(f)(3) I ordered plaintiff to identify what comparable season of "fasting and feasting" he meant. Having considered plaintiff's submission, I recommend that summary judgment be entered for the remaining defendants.

Report

Shortly after the mandate was received in July I held a conference call with counsel to discuss the obvious practical difficulty for counsel in conducting discovery over a claim that the circuit had said was worth only a nominal award if proved. Counsel were going to confer about the possibility of settlement and get back to me. After several months without hearing from counsel I issued an order to wrap up the pretrial process, including by having plaintiff identify what alleged Jewish holy

days were similarly situated with Ramadan. Plaintiff's counsel withdrew shortly thereafter. Plaintiff thereafter proceeded *pro se*, submitting Exhibit A to docket no. 43, in which a Reverend David Klink identifies two one-day (one sunrise to sundown and one sundown to sundown) fasts allegedly observed during plaintiff's time at S.C.I. Laurel Highlands. Plaintiff implicitly contends that they are similar enough to Ramadan to support his claim that he was being denied equal protection of law.

The Equal Protection Clause requires that governments treat the interests of similarly situated persons alike, unless the difference is justified by a showing of governmental necessity, a necessity that varies in its rigor depending on the nature of the interest protected and the basis of the classification. The first question therefore is whether plaintiff is similarly situated with the persons allegedly benefitting from the promulgation of information about the two one-day Jewish fasts, which is equivalent to asking whether the two one-day fasts identified by plaintiff are similar to Ramadan and Eid al-Fitra. Whether parties are similarly situated is a matter of law[1].

---

1. I do not reach the issue whether the different wording in the Ramadan notice allegedly issued by defendants Pitkins, Pleacher, and Mailman when contrasted with the language allegedly used by Reverend David Klink reflects any difference beyond that of personal style. To prevail on an Equal Protection Clause claim a plaintiff must of course show that the differences in the wording of the two notices were intentional and chosen with animus toward plaintiff's religion. I also need not reach the question whether
continue...

2

In prison, the Free Exercise Clause of the First Amendment, as interpreted by the Court of Appeals for the Third Circuit in DeHart v. Horn, 390 F.3d 262, 268 (3d Cir.2004)(DeHart III), must be considered in light of Turner v. Safley, and:

[Turner] requires courts to consider (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist. (citations omitted or expanded)

The analysis of the Equal Protection Clause claim parallels the discussion of the third and fourth Turner v. Safley factors, see DeHart III, 390 F.3d at 272, citing Dehart v. Horn, 227 F.3d 47, 61 (3d Cir.2000)(en banc)(DeHart II), but that analysis must be preceded by a showing that there is a genuine issue of fact that a plaintiff is similarly situated to the alleged more favorably treated person or persons. DeHart III, 390 F.3d at 272 n.14. As I previously wrote in this matter, for forty years it has been settled law that an inmate cannot state an equal protection claim by pointing to some instance where the prison accommodated some other religious practice - or even the same religious practice by

---

...continue
there is a legitimate penological basis for treating different inmate religious groups differently. See Fraise v. Terhune, 283 F.3d 506, 521-22 (3d Cir.2002)(rejecting claim that designation of one religious group as security threat group violated Equal Protection Clause based on evidence of that group's higher propensity for violence).

3

another religious group – and demanding an identical accommodation. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)("We do not suggest, of course, that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.")

The first and most obvious difference between Ramadan, which lasts a lunar month, and the two one-day fasts identified by plaintiff is the length of time each is observed and the corresponding burdens they place on the Pennsylvania Department of Corrections to accommodate them. Even if all other factors could be held constant (that is, there were equal numbers of Jewish inmates and Muslim inmates at Laurel Highlands seeking to observe their respective holy days) the risk of waste and unneeded expense if plaintiff's position were accepted that he or anyone choosing to participate in the month-long fast of Ramadan can decide whether to observe the fast on a day to day basis is at least fifteen times greater than if a Jewish inmate took the same position. To say that the two observances are similarly situated because both involve fasts is simplistic. And of course, plaintiff's claim hardly involves a fast at all, except for other inmates: his claim is that he should be allowed both to break the fast **and** then attend salat and iftar, so long as he resolves to make up the fast

4

privately at some time during the following year. See Complaint ¶40, and Prayers for Relief in Counts IV, V, and VI (seeking an injunction permitting plaintiff to break fast each day and still "receiv[e] evening food and drink"). The accommodation of plaintiff's religious practice, which he admits is to make a personal day to day decision about what religious observances he will observe, would cost closer to 30 times more than the allegedly similar Jewish fast days.

The Jewish fast days and the hypothetical Jewish inmate observing them are not similarly situated to Ramadan and to plaintiff because of another obvious dissimilarity. According to plaintiff's Exhibit A, Jewish inmates who observe their fast receive a bag dinner after the end of the fast day, while Muslim inmates are accommodated by being allowed to choose to break their fast privately in their cell **or** to attend iftar as a communal meal, accompanied by communal prayer. There are therefore fundamentally greater logistical difficulties in tracking inmate movements and arranging for meal delivery during Ramadan observances because the nature of the accommodation of Ramadan is different from (and notably **more** extensive than) the alleged accommodation of the two Jewish one-day fasts.

Third, Ramadan is ended by Eid al-Fitra, to which there is nothing comparable in the Jewish fast days. It is obvious to anyone reading the defendants' alleged guidelines for participation

in Ramadan that a major concern is for payment of the cost of participation in the Eid, but I need not reach the question whether having monitory guidelines is justified by that necessity because the Equal Protection Clause is based on a claim that the Jewish holy days are similarly situated, and even on the simplest level a fast is fundamentally different from a feast.

Finally, summary judgment must be entered for defendants on the grounds of qualified immunity (a matter which I am required to consider "at any time," see 28 U.S.C.§ 1915(e)(2)). Qualified immunity protects defendants Pitkins, Pleacher, and Mailman from civil liability for damages (the remaining claim is Count VII, the Section 1983 claim for violating the Equal Protection Clause; there are no damages awardable under RLUIPA) so long as "[their] actions could reasonably have been thought consistent with the rights [they are] alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity protects all government officials except those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The law must be so sufficiently clear that "every" reasonable official would have understood that what he is doing violates a plaintiff's rights. Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011). As applied to this issue, unless Ramadan is so clearly similarly situated to the two Jewish fast days identified by plaintiff that no one could reasonably regard them as different,

defendants cannot be held liable even if they treated them differently. There is no judgment call here: the holy days are not similar in any relevant way. Qualified immunity therefore also requires summary judgment for defendants Pitkins, Pleacher, and Mailman.

Of course, plaintiff's Equal Protection Clause claim is based not on the alleged favorable treatment of Jewish inmates on their holy days, but on the even more derivative claim that the defendants' guidelines for Jewish inmates' participation in the Jewish holy days were more favorable than the guidelines for plaintiff's participation in Ramadan. Plaintiff was not actually subject to any of these regulations: as plaintiff alleges in his complaint he was so offended by the wording of the defendants' guidelines for observance of Ramadan that he refused to participate in the congregate observances of Ramadan. Complaint ¶42. It is not clear that plaintiff even has standing to challenge on equal protection grounds the wording allegedly used by the defendants to accommodate some other inmates' religious observances. But even if plaintiff has standing, the guidelines for Ramadan cautioned inmates that violation of the guidelines "may result" in them being prohibited from participation in the Eid al-Fitra. The guidelines themselves do not impose any punishment or burden on the observance of Ramadan, and plaintiff's legal conclusion to the contrary can be and is disregarded. It is not unreasonable for defendants to

expect that language cautioning inmates that behavior has consequences should be interpreted reasonably as a caution that behavior has consequences. A reasonable belief that their actions conform to the law is all it takes for the defendants to be protected by the defense of qualified immunity. There is nothing in Exhibit A that would put any reasonable person on notice that there are similar holy days and that the observers of one of them are being treated in discriminatory fashion or threatened with discriminatory treatment. Because of the absence of a genuine issue of material fact that the Jewish and Muslim holy days are similarly situated or that a reasonable government official should think that they are, summary judgment should be entered for the remaining defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 30 December 2013

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Elwood A. Small AM-9183
S.C.I. Graterford
P.O. Box 244
Graterford, PA 19426-0246